UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JEWEL SHEPARD,<br><br>          Plaintiff,<br><br>    vs.<br><br>BAYVIEW LOAN SERVICING, LLC, et al.,<br><br>          Defendants. | 3:18-cv-00185-RJC-WGC<br><br>**ORDER** |

    This case arises out of a foreclosure of real property. Now pending before the Court are a motion to remand, (ECF No. 6), a motion for recusal, (ECF No. 7), and two motions to quash service, (ECF Nos. 9, 10). For the reasons given herein, the Court grants the motion to remand and denies the remaining motions as moot.

## I.    FACTS AND PROCEDURAL HISTORY

    Plaintiff Jewel Shepard alleges she entered into an agreement with Defendant Akerman LLP, a law firm hired by Defendant Bayview Loan Servicing, LLC, to short sell her home at 2190 S. Marsh Avenue in Reno, Nevada ("the Property"). Ms. Shepard alleges she was punctual in filling out all related paperwork and was fully cooperative throughout the short sale approval process. Ultimately, however, Bayview foreclosed on the Property rather than approve Ms. Shepard's request for a short sale.

///

As a result of the foreclosure, Ms. Shepard brought this action in state court against Bayview; prior loan servicer, Bank of America ("BANA"); BANA's predecessor, Countrywide; the initial trustee under the deed of trust, Recontrust; Bayview's attorneys, Akerman, LLP and Tenesa Scaturro; and two alleged "squatters" who were occupying the Property, Kevin Cloutier and Scott McDuffie.[1] She alleged causes of action arising under state law for breach of contract, conversion, "account stated," and unjust enrichment. (Compl. 7–10, ECF No. 2-2 at 8.)

On April 26, 2018, Bayview timely removed the case to this Court under 28 U.S.C. § 1332. Bayview concedes that complete diversity does not exist among the named parties. However, Bayview argues that Countrywide, Recontrust, Akerman, and Scaturro are sham defendants, and their citizenship should be ignored for purposes of diversity jurisdiction.

## II.    MOTION TO REMAND (ECF NO. 6)

Generally, federal jurisdiction based on diversity of citizenship requires that the claim satisfy the jurisdictional amount, $75,000, and that there be complete diversity among the parties, i.e., that no defendant shares citizenship with any plaintiff, and that no defendant is a citizen of the state in which the suit was filed. 28 U.S.C. § 1332. However, when suit is brought against a fraudulent or "sham" defendant for the purposes of defeating diversity jurisdiction, the citizenship of that defendant may be disregarded for purposes of establishing jurisdiction. *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) ("It is a commonplace that fraudulently joined defendants will not defeat removal on diversity grounds.").

A defendant is fraudulently joined if the plaintiff fails to state a claim against him and that failure is "obvious according to the settled rules of the state." *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). Thus, the removing party bears the burden of

---

1 Cloutier and McDuffie have since been dismissed by Ms. Shepard. (*See* Am. Compl., ECF No. 2-2 at 43.)

proving, by clear and convincing evidence, that (1) plaintiff has not stated a claim against the non-diverse party, and (2) plaintiff cannot state a claim against the non-diverse party. *See Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007); *Greene v. Wyeth*, 344 F. Supp. 2d 674, 682 (D. Nev. 2004).

The issue of whether removal was proper is generally determined on the pleadings as they existed at the time of removal. *Eagle v. American Tel. & Tel. Co.*, 769 F.2d 541, 545 (9th Cir. 1985) (citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939)). In cases where there is a question of whether the non-diverse defendant was fraudulently joined, the district court is allowed to "pierce the pleadings" and consider additional evidence of a summary judgment nature. *See Ritchey*, 139 F.3d at 1318 (stating that "a defendant must have the opportunity to show that the individuals joined in the action cannot be liable on any theory"). Nevertheless, consideration of the legitimacy of removal should be limited to evidence available at the time of removal and "not on possible future evidence that may be obtained through further discovery." *Kite v. Zimmer*, 2006 WL 3386765, *1 (D. Nev. 2006) (Jones, J.). Examining this evidence, the court must resolve "all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party." *Plute v. Roadway Package Sys., Inc.*, 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001) (internal citations omitted).

### a. Ms. Shepard Is a Citizen of Nevada, Not California

The parties do not dispute the alleged citizenship of the various defendants. Bayview is a citizen of Delaware and Florida. (Resp. 2, ECF No. 14.) BANA is a citizen of North Carolina. (*Id.* at 3.) Countrywide and Recontrust are alleged to be citizens of California. (Am. Compl. ¶ 6, ECF No. 2-2 at 46; Resp. 4.) Lastly, Akerman is alleged to be a citizen of Florida, and Ms. Scaturro a citizen of Nevada. (Am. Compl. ¶ 7; Resp. 4 n.3.) The parties also do not dispute the alleged citizenship of Ms. Shepard, who claims in her Complaint and Amended Complaint to

reside in California. However, a closer look at the pleadings and motion briefs reveals that Ms. Shepard cannot be treated as a citizen of California for purposes of determining diversity.

It is very well established in the federal courts that "[r]esidence and citizenship are not the same thing." *Mantin v. Broad. Music, Inc.*, 244 F.2d 204, 206 (9th Cir. 1957). A "natural person's state citizenship is . . . determined by her state of domicile, not her state of residence. A person's domicile is her permanent home, where she resides *with the intention to remain or to which she intends to return.*" *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (emphasis added). Here, Ms. Shepard's own filings make her intentions quite clear. In her original Complaint, filed March 20, 2018, she stated that she was residing "at various locations in Southern California, *attempting to gain entrance to her home* located at 2190 S. Marsh Ave., Reno, Nevada." (Compl. ¶ 2, ECF No. 2-2 at 3 (emphasis added).) When she filed her Amended Complaint on April 18, she changed this language slightly: "Plaintiff . . . resides at various locations in Southern California, and uses a mail drop in Burbank, California, due to issues arising from property located at 2190 S. Marsh Ave., Reno, Nevada 89509." (Am. Compl. ¶ 3, ECF No. 2-2 at 45.) Finally, in her motion to remand of May 3, Ms. Shepard represented that she has returned to Nevada and is once again occupying the Property. (Mot. Remand 16 ("Plaintiff has finally taken control of the Marsh property."), 18 ("Plaintiff is here at 2190 S. Marsh Ave."), ECF No. 6.)

Therefore, because it is clear that Ms. Shepard does not have a permanent residence in California and always intended to return to her home in Reno, she must be considered domiciled in and a citizen of Nevada for purposes of diversity jurisdiction.

### b. The Court Cannot Conclude That Ms. Scaturro Is Fraudulently Joined

Having established Ms. Shepard's Nevada citizenship, the only non-diverse defendant appears to be Ms. Scaturro. As the removing party, Bayview argues that Ms. Scaturro is a sham

1  defendant under *Dezzani v. Kern & Assocs., Ltd.*, 412 P.3d 56 (Nev. 2018), a case which

2  recognized that "an attorney providing legal services to a client generally owes no duty to

3  adverse or third parties." *Id.* at 62. In *Dezzani*, the Nevada Supreme Court addressed whether an

4  attorney can be held individually liable for retaliatory action under NRS 116.31183 as the agent

5  of a common-interest community homeowners' association. The plaintiffs alleged that their

6  HOA's attorney "retaliated against them because they requested that the HOA retain a new

7  attorney; however, [plaintiffs] did not specify how [the attorney] retaliated against them other

8  than furnishing advice to the HOA and communicating with [plaintiffs] on behalf of the HOA."

9  *Id.* at 58. The Nevada Supreme Court affirmed the district court's dismissal of claims against the

10  HOA's attorney. In so holding, the Court reasoned:

11          NRS 116.31164(4) states that a foreclosure sale can be "conducted by the
        association, its agent or attorney." This distinction demonstrates that the
12      Legislature used the term "attorney" when it intended to address situations
        applying to attorneys and the term "agent" when it intended to generically address
        the duties owed by agents. . . . Accordingly, given the Legislature's distinction
13      between "agent" and "attorney," we conclude that the Legislature did not intend
        for attorneys to be included in the term "agent" for the purposes of [individual
14      liability under] NRS 116.31183.

15

16  *Id.* at 59–60.

17          However, the holding in *Dezzani* is at once too broad and too narrow to be applied to this

18  case. It is too broad in the sense that the Supreme Court only addressed whether the attorney-

19  client relationship gives rise to attorney liability to third parties in the most general sense. The

20  *Dezzani* plaintiffs had not alleged any specific wrongful conduct against their HOA's attorney;

21  thus, the sole basis for the attorney's liability was the mere fact of providing legal representation

22  to the HOA. On that issue, the opinion simply reiterates that "the attorney-client relationship is

23  an agent-principal relationship in the context of whether the client is responsible for the acts of

24  the attorney," but "[i]t does not follow that because an agency relationship has been recognized

in the context of client liability for attorney actions that the same notion applies in the context of attorney liability to an adverse or third party from actions taken in representing a client."[2] *Id.* at 61–62. On the other hand, the *Dezzani* ruling is too narrow in the sense that it centers on the specific provisions of NRS 116 and the Legislature's distinct usage of the terms "agent" and "attorney" within that Chapter, and thus cannot be readily extrapolated to apply to Chapter 107.

Furthermore, the *Dezzani* opinion does not directly address situations in which a lawyer may be fulfilling a dual role, or acting as a "dual agent." The Ninth Circuit, interpreting California law, has stated: "It is well established that, unless an agent or employee acts as a dual agent . . ., she cannot be held individually liable as a defendant unless she acts for her own personal advantage." *Mercado v. Allstate Ins. Co.*, 340 F.3d 824, 826 (9th Cir. 2003). A dual agent is one who "assum[es] special duties for the benefit of [a third party] beyond those required by her principal." *Id.* at 826 n.1. In dissenting from the majority opinion in *Dezzani*, Justice Pickering also emphasized the widely-accepted rule that "[l]awyers are subject to the general law. If activities of a nonlawyer in the same circumstances would render the nonlawyer civilly liable . . ., the same activities by a lawyer in the same circumstances generally render the lawyer liable . . . ." *Dezzani*, 412 P.3d at 66–67 (quoting Restatement (Third) of the Law Governing Lawyers § 56 cmt. b (Am. Law Inst. 2000)). Accordingly, *Dezzani* does not eliminate the possibility that an attorney may be liable to a third party when acting beyond the scope of the

---

2 It should be stated that there is nothing novel or controversial about this conclusion. Indeed, the same general proposition is applicable to non-attorney agency relationships. *See, e.g., Mercado v. Allstate Ins. Co.*, 340 F.3d 824, 826 (9th Cir. 2003) (quoted *infra*); *Walker v. Am. Nat'l Ins. Co.*, No. 16-cv-6255-HSG, 2017 WL 3605222, at *2 (N.D. Cal. Aug. 22, 2017) (observing that agents are immune from individual liability unless they act as dual agents or for their own advantage).

attorney-client relationship, when acting for her own advantage, or when she owes independent duties to the third party (e.g., duties arising from a state statute).

Here, Ms. Shepard contends that, at the time the Property was foreclosed, she was in discussions with Bayview regarding a short sale, and that Ms. Scaturro was not only Bayview's lawyer, but was also designated by Bayview as her "single point of contact" pursuant to NRS 107.540. That section provides: "If a borrower requests a foreclosure prevention alternative, the mortgage servicer must promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact." Nev. Rev. Stat. 107.540(1). These allegations are plausible, based on email records attached to the First Amended Complaint which specifically reference the short sale. Within the same thread, Ms. Scaturro appears to request information and documents for the short sale approval while plainly instructing Ms. Shepard's broker to "direct all communications on this matter through [her] office." (Emails of Oct. 17, 2017, ECF No. 2-2 at 56–59.)

Ms. Shepard also alleges that Ms. Scaturro breached her statutory duties as the single point of contact. The Court finds this allegation plausible as well. For example, Nevada law requires the single point of contact to "communicat[e] the process by which a borrower may apply for an available foreclosure prevention alternative *and the deadline for any required submissions to be considered for the foreclosure prevention alternatives*." Nev. Rev. Stat. 107.540(2)(a) (emphasis added). In her email to Ms. Shepard's broker on October 17, 2017, Ms. Scaturro indicated a "settlement date" of December 31, 2017. Although the Court cannot be certain of the actual import of the "settlement date" without further context, it would certainly be reasonable for Ms. Shepard and her broker to have concluded that December 31 was the date on which the parties were projected to finalize their agreement regarding the prospective short sale. However, on October 26, 2017, a mere nine days after Ms. Scaturro advised Ms. Shepard,

through her broker, of the December 31 deadline, Bayview sold the Property at public auction. This raises serious questions, not only concerning the manner in which Ms. Scaturro dispensed of her obligations as the alleged single point of contact, but also concerning Bayview's compliance with Nevada's dual tracking statute.[3] *See* NRS 107.530.

In response to the motion to remand, Bayview makes the specious argument that there was no obligation to designate a single point of contact in this case because NRS 107.540 only applies when a property subject to foreclosure is "owner-occupied," meaning that the housing is "occupied by an owner as the owner's primary residence." (Resp. 4 n.4, ECF No. 14.) Even if this reading of the statute's applicability is correct, Bayview supports its position merely by asserting that Ms. Shepard "conceded in her complaint that she was not occupying the Marsh property as her primary residence, because she stated she lives in California." (*Id.*) However, the Property was foreclosed on October 26, 2017, and the Complaint was filed on March 20, 2018. Where Ms. Shepard was residing five months after the foreclosure sale occurred has no bearing on whether the Property was "owner-occupied" at any time relevant to her claims.

The crucial question now before the Court is whether it is "obvious according to the settled rules of the state" that Ms. Shepard does not have a valid individual claim against Ms.

---

3 On October 30, 2017, Ms. Shepard's broker wrote to Ms. Scaturro: "Am I wrong that when a home enters into a short sale the foreclosure process is to cease BY LAW? Why were you requesting documents from me and the buyer October 17th, 2017 via email when you were knowingly going to move forward with the sale? We were in short sale, were we not? Was it not you who sent me the short sale paperwork and instructed me to put all communications through you? As the person requesting all communications go through you as the foreclosing attorney; should you not have mentioned that you were not going to stop the sale date? I am not sure what Ms. Shepard is going to do legally, but this whole process is now seemingly just a ruse to keep her from filing another lis pendens to prevent the foreclosure again which would have bought us more time to complete the short sale. If this is your process of dealing with borrowers, it is terrible and a waste of many people's time." (Email of Oct. 30, 2017, ECF No. 2-2 at 41.)

Scaturro. The Court is compelled to answer that question in the negative. NRS 107.560 provides

a remedy for a borrower whose property was foreclosed in violation of NRS 107.400–560:

> After a trustee's deed upon sale has been recorded . . ., a borrower may bring a
> civil action in the district court in the county in which the property is located to
> recover his or her actual economic damages resulting from a material violation of
> NRS 107.400 to 107.560, inclusive, by the mortgage servicer, mortgagee,
> beneficiary of the deed of trust or an authorized agent of such a person, if the
> material violation was not corrected and remedied before the recording of the
> trustee's deed upon sale . . . .

It is clear that Ms. Scaturro cannot be sued for actions taken solely in the course and scope of her

legal representation of Bayview, and solely for Bayview's benefit. However, in assuming the

role of the single point of contact under NRS 107.540—if such was the case—it is more than

reasonable to conclude that she incurred special statutory duties for the benefit of Ms. Shepard,

beyond those required by her principal. *See Mercado*, 340 F.3d at 826 n.1. Thus, by virtue of

acting as the single point of contact, she may have become a "dual agent," with distinct duties

owed both to Bayview and Ms. Shepard. If so, NRS 107.560 may well subject her to individual

liability for a failure to fulfill her statutory duties, as the section appears expressly to authorize a

cause of action against an "authorized agent of a mortgage servicer" who causes a material

violation of the Chapter's provisions.

   These are novel questions of state law, which a state court is far better suited to answer.

The question this Court can answer, however, is that it is not clear under Nevada law that Ms.

Shepard has no individual claim against Ms. Scaturro based on the requirements of Chapter 107.

As another court in this District has observed: "Where there is a 'non-fanciful possibility' that

the Plaintiffs can state a claim against the non-diverse Defendants, the Court must remand."

*Greene*, 344 F. Supp. 2d at 682 (citation omitted). This Court cannot find Ms. Scaturro to be

fraudulently joined, and thus cannot find that complete diversity exists. Furthermore, Ms.

Scaturro's Nevada citizenship makes removal inappropriate under the forum-defendant rule. *See* 28 U.S.C. § 1441(b)(2). The case must be remanded.

The Court makes no statement on whether liability may exist for Ms. Scaturro in this action. Currently, there is insufficient evidence in the record to establish either that Ms. Scaturro was actually designated as single point of contact, or that Ms. Scaturro acted beyond the scope of her agency. However, on a motion to remand, these factual disputes must be resolved in favor of the non-removing party. The Court's ruling here reflects only the principle that close and novel issues of state law are best decided by state courts.

On remand, should the state court conclude that Ms. Scaturro is not a proper defendant, or that Ms. Shepard has failed to state a claim against her, resulting in her dismissal from the action, the remaining defendants are free to refile their removal petition at that time. *See* 28 U.S.C. § 1446(b)(3). However, this Court lacks subject matter jurisdiction to make the initial determination whether any state law cause of action may be maintained against Ms. Scaturro.

## CONCLUSION

IT IS HEREBY ORDERED that the motion for remand (ECF No. 6) is GRANTED. This case is hereby remanded to the Second Judicial District Court of Nevada, Washoe County.

IT IS FURTHER ORDERED that the remaining motions (ECF Nos. 7, 9, 10) are DENIED AS MOOT.

The Clerk of Court shall close the case.

IT IS SO ORDERED.

_____
ROBERT C. JONES
United States District Judge

*July 24, 2018.*